(926 P.2d 669)
No. 73,787
No. 73,921

RYCO PACKAGING CORP. OF KANSAS, *Appellee/Cross-Appellant*, v. CHAPELLE INTERNATIONAL, LTD., *et al.*, *Appellants/Cross-Appellees*.

Opinion filed November 15, 1996.

*William R. Stalter* and *Michael J. Gallagher*, of Wassberg, Gallagher & Stalter, P.C., of Kansas City, Missouri, for appellants/cross-appellees.

*Martha A. Halvordson, Troy A. Stremming*, and *Leonard Rose*, of Rose, Brouillette & Shapiro, P.C., of Kansas City, Missouri, for appellee/cross-appellant.

Before PIERRON, P.J., PADDOCK, S.J., and NELSON E. TOBUREN, District Judge, assigned.

PADDOCK, J.: The individual defendants (guarantors) appeal from the district court's entry of summary judgment for the plaintiff Ryco Packaging Corporation of Kansas (Ryco).

Ryco cross-appeals from the district court's denial of its claim against the guarantors for its attorney fees.

We affirm the district court on the appeal and the cross-appeal.

Ryco and the defendant Chapelle International, Ltd. (Chapelle) are Kansas corporations.

Scott H. Kreamer, David Newcomer IV, F. Peter Newcomer, Frank Newcomer III, and Dwight D. Sutherland, Jr., are the officers and majority stockholders of Chapelle. Scott Kreamer and

Dwight Sutherland are licensed to practice law in Kansas and have each practiced law for more than 10 years.

In December 1992, Ryco sold to Chapelle over 90,000 cases of 23-ounce bottles and over 900 pallets for $346,737.72, with payment due in April 1994. The goods were to be used in Chapelle's bottled water business.

As of April 21, 1993, Chapelle owed Ryco $738,417.06, which included the December 1992 purchase, an amount due on an open account, and $352,415.04 for bottles ordered from Ryco in 1991. Ryco had remained in possession of some of the bottles ordered in 1991.

Ryco became concerned about collecting the debt from Chapelle and Chapelle wanted the bottles still in Ryco's possession. On April 21, 1993, they entered into a credit agreement which required Ryco to deliver the bottles ordered in 1991 upon receipt from Chapelle of executed documents consisting of a promissory note for the balance due, a cash payment of $75,000 on the note, and a personal guaranty from the guarantors to pay to Ryco its balance of the note which was due on May 21, 1994. The promissory note stated it was guaranteed by the guarantors pursuant to a guarantee "dated contemporaneously herewith."

The credit agreement and promissory note were executed on or about April 21, 1993. The guaranty agreement was executed by the guarantors on or about April 29, 1993.

The relevant portions of the guaranty provide as follows:

"GUARANTEE made on this 29th day of April, 1993, by [the guarantors], to RYCO PACKAGING CORPORATION OF KANSAS, a Kansas corporation (hereinafter referred to as 'Creditor'), as an inducement to Creditor to extend credit in the amount of [$738,417.06] to CHAPELLE INTERNATIONAL, LTD., a Kansas corporation, (hereinafter referred to as 'Debtor').

"For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of Creditor's extending credit in the amount of [$738,417.06] to Debtor, Guarantors agree as follows:

"1. Guarantors, jointly and severally, absolutely and unconditionally guarantee to Creditor and its successors and assigns the full and complete payment, as and when the same become due and payable, of:
    (a) the Promissory Note of Debtor . . . .;
    (b) all sums owing and to be owing upon any and all renewals, extensions, and consolidations of such Note, and all instruments had and to be had in connection therewith; and

(c) all attorneys' fees, court costs and other costs and expenses incurred by Creditor in connection with the collection of such Note and/or any of the aforementioned amounts for the payment of which Debtor is or may become liable, subject to the limitations specified in the Note . . ., or any renewal, extension, modification or consolidation thereof . . . .

. . . .

"3. Guarantors agree that the liability of Guarantors shall not be released, diminished, impaired, reduced or affected by:

. . . .

"(c) any renewal, extension, modification or consolidation of the payment of any part or all of the Note or the performance of any covenant contained in any instrument had or to be had in connection with or as security for the Note, either with or without notice to or consent of Guarantors, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to any party;

. . . .

"7. Except as provided in any other written agreement now or at any time hereinafter in force between Creditor and Guarantors, this Guarantee shall constitute the entire agreement of the undersigned with the Creditor with respect to the subject matter, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon Creditor unless expressed herein.

"8. Should any one or more provision of this Guarantee be determined to be illegal and unenforceable, all other provisions, nevertheless, shall be effective."

In November 1993, Ryco and Chapelle executed an addendum to the credit agreement and promissory note. The addendum to the credit agreement indicated that a dispute had arisen between Ryco and Chapelle concerning Chapelle's various claims for storage fees and other credits. The addendum also notes that Chapelle was requesting an extension in the payments as set forth in the original credit agreement and promissory note. The addendum was entered into to resolve the dispute and extend the payment schedule. The addenda to both documents set forth a revised, graduated payment schedule of the remaining $372,159.69 Chapelle owed Ryco. Dwight Sutherland, Jr., signed both addenda on behalf of Chapelle.

In May 1994, Ryco filed this case against Chapelle and the guarantors. Ryco alleged that Chapelle had failed to make the monthly payments due under the promissory note after it was amended in November 1993. Ryco asserted that a principal balance of over

$250,000 remained on the promissory note. Ryco sought judgment against Chapelle on the note and judgment against the guarantors under the terms of the guaranty agreement.

The guarantors filed an answer to Ryco's petition and asserted a counterclaim seeking a declaratory judgment that the guaranty was void and unenforceable for lack of consideration.

On August 22, 1994, Ryco filed its motion for summary judgment on its claims against Chapelle and the guarantors. The guarantors responded to Ryco's motion. The district court granted Ryco's motion for summary judgment against Chapelle after Chapelle failed to respond to the motion.

At the hearing on Ryco's motion, the parties conceded that the guaranty was unambiguous. The district court found that the guarantee was unambiguous and granted summary judgment in favor of Ryco against all the guarantors. The court found that consideration existed to support the guaranty agreement based upon (1) the consideration recited in the agreement itself; (2) that the guaranty agreement was a collateral document to Chapelle's credit agreement and promissory note, which were supported by consideration; and (3) Chapelle's promise to pay its outstanding trade debt over a period of time was sufficient legal consideration to support all the agreements. The court entered judgment in favor of Ryco in the amount of $302,247.73, plus costs.

The guarantors filed a timely notice of appeal. Chapelle did not appeal.

A separate hearing was held on Ryco's request for attorney fees in the amount of $39,519.30. The district court found that when the guaranty was executed by the parties in April 1993, K.S.A. 58-2312 (Ensley) invalidated any contract provision in any "note, bill of exchange, bond or mortgage" which required the payment of attorney fees. The district court also found that 1994 amendments to 58-2312 which permitted contractual provisions for attorney fees, could not be retroactively applied to permit Ryco to recover its attorney fees. Ryco filed a timely notice of appeal from this order. Ryco also filed a notice of cross-appeal raising the same issue following the entry of the journal entry of summary judgment.

The guarantors' appeal and Ryco's cross-appeal were docketed separately on appeal and were ordered consolidated for appeal by this court.

In granting summary judgment, the district court found that there was no genuine issue of material fact that would preclude the court from entering judgment as a matter of law. Our standard of review when considering an order granting summary judgment is well known:

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. K.S.A. 60-256(c). If reasonable minds could differ as to the conclusions drawn from the facts, summary judgment must be denied. [Citations omitted.] When a summary judgment is challenged on appeal, this court must read the record in the light most favorable to the party defending against the motion. [Citation omitted.] Once the moving party has properly supported a motion for summary judgment, the nonmoving party must come forward with specific facts showing a genuine issue for trial. [Citation omitted.]" *Moorehouse v. City of Wichita*, 259 Kan. 570, 575-76, 913 P.2d 172 (1996).

In their brief, the guarantors argue that there is a genuine issue of what the term "extension of credit" means in the guaranty agreement and that the vagueness of the terms creates a genuine issue of material fact. This is inconsistent with their arguments before the district court where the guarantors' attorney conceded that the guaranty was not ambiguous.

This argument is also inconsistent with the guarantors' contention that the parol evidence statute prevents any extrinsic evidence to establish the parties' intent. Clearly, if a contract is ambiguous, parol evidence is permissible to assist in determining the parties' intent at the time the contract was executed. *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, Syl. ¶ 4, 673 P.2d 1112 (1983).

The guarantors' liability involves the construction of a written contract. " 'Regardless of the construction of the written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by the appellate court.' [Citation omitted.]" *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 241, 898 P.2d 1145 (1995). If a contract is unambiguous, this court must

"look only to the four corners of the agreement to determine the parties' intent, harmonizing the language therein if possible." 21 Kan. App. 2d at 242. Moreover, the fact that the parties differ as to what an unambiguous contract requires does not force this court to find that the contract was, in fact, ambiguous. 21 Kan. App. 2d at 242.

## The failure of consideration issue

The guarantors argue that there was no consideration supporting the guaranty signed by them. The guarantors opine that the only consideration stated in the guaranty document was the "consideration of [Ryco] extending credit" to Chapelle in excess of $700,000. The guarantors argue that the guarantee is an "integrated" agreement and that parole evidence cannot be used to change the nature of the consideration specified in the agreement. Finally, the guarantors argue that Ryco did not extend "new" credit to Chapelle. Because Ryco did not perform its executory promise to "extend" *new* credit to Chapelle, according to the guarantors, no consideration existed to support the guaranty agreement.

To accept the guarantors' arguments, we would have to accept several unspoken premises. First, we would have to accept the guarantors' attempt to read the guaranty in isolation from the promissory note and the credit agreement. Second, we would have to find that the language in the guaranty agreement was either ambiguous or unambiguously required "new" credit. Both of these premises, however, are inconsistent with Kansas law and/or the facts.

The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow. *Hollenbeck v. Household Bank*, 250 Kan. 747, 751, 829 P.2d 903 (1992). "Documents which are executed at different times, but in the course of the same transaction concerning the same subject matter, will be construed together to determine the intent of the parties to the contract." 250 Kan. at 752.

When a guaranty agreement is executed at about the same time as the underlying transaction between the creditor and debtor, the

guaranty is read in conjunction with the underlying documents. In *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 856 P.2d 111 (1993), the Supreme Court considered whether there was consideration supporting a buyer's agreement to assume a mortgage on real estate the buyer purchased. In reviewing the facts, the Supreme Court reasoned that the court had to review both the contract to sell the land and the mortgage assumption agreement together. 253 Kan. at 313. "When one contracts to assume a mortgage even though the documents are executed at different times, but in the course of the same transaction concerning the same subject matter, they will be construed together to determine the intent of the parties to the contract." 253 Kan. 307, Syl. ¶ 4.

In this case, the credit agreement and promissory note were signed several days prior to the execution of the guaranty agreement. However, the guaranty agreement clearly references the "credit" to Chapelle of $738,417.06 and the promissory note of $663,417.06. The promissory note referenced in the guaranty agreement in turn references the guaranty. Finally, the credit agreement, reciting various "facts and objectives," specifically requires Chapelle's execution of the promissory note and the personal guaranty by the guarantors.

Reading all of the documents together, it is clear that the "extension of credit" the parties intended was Ryco's agreement to permit Chapelle to pay its debt over an extended period of time. Whether this consideration is more like an "extension of credit" or a forbearance is not really relevant. The documents on their face clearly show that the additional time to make the payments was the consideration supporting the underlying agreements and the guaranty. The intent of all the parties is clear. The guarantors' attempts to evade liability because the consideration was a "forbearance," not specified in the guaranty agreement, rather than an extension of credit is nothing more than a game of semantics. The guaranty was unambiguous.

The guarantors argue that even if the extension of payment by Chapelle was the consideration for the underlying agreement, that the past consideration is insufficient to create a binding guaranty agreement. The passage referenced by the guarantors, however,

pertains to guaranties entered into as part of a *separate* transaction distinct from the underlying debt. That authority provides:

"If the guaranty agreement was entered into, *not as part of a transaction which included the creation of the original or principal debt or obligation,* but independent thereof, the guarantor's promise must have been supported by a consideration which was distinct from that of the principal debt. A consideration is not found in a mere naked promise to pay the existing debt of another. ·

"Although the guaranty promise may have been made at a time subsequent to the creation of the principal obligation, the guaranty promise is founded upon a consideration if the promise was given as the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty." (Emphasis added.) 38 Am. Jur. 2d, Guaranty § 45, pp. 1047-48.

That same authority also provides:

"If the promise of the guarantor is shown to have been given as part of a transaction or arrangement which created the guaranteed debt or obligation, it is not essential to a recovery on the promise of guaranty that the promise shall have been supported by a consideration other than that of the principal debt—that is, one and the same consideration may suffice for both contracts where the contract of guaranty has been entered into at the time of creation of the principal obligation. For example, a guaranty of payment is supported by a consideration where it accompanies and is the inducement for a sale of goods or an extension of credit." 38 Am. Jur. 2d, Guaranty § 44, p. 1047.

The guarantors also argue that Ryco did not extend credit to Chapelle as a result of the guaranty but that Ryco sought the guaranty as additional security for an existing debt. However, "[a]n extension of the time of payment of an obligation constitutes in legal effect a forbearance to sue and . . . is a sufficient consideration for a guaranty of the obligation." 38 Am. Jur. 2d, Guaranty § 47, p. 1051.

Before the district court, the guarantors appeared to argue that Ryco's agreement to release the remaining 9-ounce bottles were not consideration because those bottles already belonged to Chapelle free and clear of any liens. The guarantors rely on the affidavit of an accountant who determined that as of December 31, 1992, Ryco had confirmed that it was holding 131,000 cases of bottles for Chapelle without any liens and encumbrances. Although this issue was not raised directly on appeal, it was mentioned by the guarantors in their oral argument.

The credit agreement clearly recites that Ryco would deliver the remaining bottles subject to the terms and conditions of the credit agreement. Therefore, the parties acknowledged that the delivery of the remaining bottles was part of the consideration supporting the underlying agreements. The accountant's affidavit cannot be used by the guarantors to vary the clear terms of the written credit agreement.

The guaranty agreement, when read in conjunction with the credit agreement and promissory note, establishes that the consideration for the entire transaction was Ryco's agreement to allow Chapelle to pay its debt over time (which would allow Chapelle to continue operating). While this is not an extension of new credit, it did permit Chapelle to defer payments over a 12-month period. Whether this is a "forbearance," or an "extension of credit," or both is irrelevant because it clearly was the consideration the parties intended.

### The insufficient consideration issue

The guarantors argue that even if Ryco's forbearance in collecting against Chapelle, *i.e.*, its entering into the credit agreement and promissory note, can be consideration for their guaranty, such consideration was insufficient. The guarantors argue that because Chapelle was insolvent at the time the debt was entered into, there was no consideration for Ryco's forbearance. The guarantors rely on *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 697 P.2d 858 (1985).

In *Ludwick*, Virginia Bryant was the owner of Tender Loving Care, Inc., a Kansas corporation in the business of providing day care services. The corporation stopped operations in August 1981. Shortly before ceasing operations, the corporation filed its second quarter wage report with a state agency; the check accompanying the report for payment of taxes was returned by the bank unpaid because of insufficient funds. 237 Kan. at 48. Approximately a year later, Bryant signed a personal guaranty agreeing to assume responsibility for the unpaid tax liability of the corporation. Bryant subsequently refused to pay the outstanding tax liability, claiming, in part, that the guaranty agreement lacked consideration. 237 Kan.

at 49. The state agency brought suit to collect on the guaranty agreement. The trial court granted summary judgment in favor of Bryant, finding that there was no consideration to support the agreement. 237 Kan. at 49-50.

On appeal, the Kansas Supreme Court dealt with the issue of the sufficiency of consideration. The court noted that "consideration is sufficient if there is a benefit to the debtor or an inconvenience or deprivation to the creditor, such as a promise by the creditor to refrain from legal proceedings or an extension of time within which the debtor may pay the creditor." 237 Kan. at 50. The court also recognized that consideration can exist when a creditor forebears from bringing suit against a creditor in exchange for the guaranty of another. 237 Kan. at 51. However, the court found that " '[a]ny forbearance to prosecute or defend a claim or action . . . is usually a sufficient consideration for a contract based thereon, unless the claim or defense is obviously invalid, worthless or frivolous.' " 237 Kan. at 52 (quoting *Snuffer v. Westbrook*, 134 Kan. 793, Syl. ¶ 1, 8 P.2d 950 [1932]). The court noted that " 'forbearance to press [a claim] is not a sufficient consideration if there is *no possibility of enforcement and collection*, making both the claim and the forbearance valueless.' [Citation omitted.]" (Emphasis added.) 237 Kan. at 52. The court noted that the corporation was defunct, had not operated since August 1981, and had forfeited its charter. 237 Kan. at 48, 53.

Although the court found consideration lacking in *Ludwick*, the court cited to *Home State Bank v. DeWitt*, 121 Kan. 29, 245 Pac. 1036 (1926). In *Home State Bank*, the Supreme Court stated:

"The fact that Ralph M. DeWitt was unable to pay his notes, and that he had no property from which a judgment upon them could be collected, did not prevent their surrender from constituting a sufficient consideration for the new notes. The relinquishment of an existing obligation by the obligee is a good consideration for a contract however faint may be the prospect of realizing upon it. . . . A note executed by a person who is still alive cannot be said as a matter of law to be without value, although the maker is wholly without present means." 121 Kan. at 31.

The guarantors argue that any forbearance by Ryco was insufficient consideration because Chapelle was already insolvent in

April 1993. The guarantors relied on an affidavit from an accountant who reviewed Chapelle's books and determined that as of March 1993, Chapelle had a substantial negative net worth and had previously pledged all of its assets to secure a $900,000 bank debt.

The accountant's affidavit indicated, however, that Chapelle was able to make payments on the promissory note to Ryco for at least several months after April 30, 1993. Likewise, Chapelle's glass inventory decreased each month between March 31 and May 31, 1993.

The guarantors' arguments are based upon the fact that Chapelle's books, when reviewed by an accountant, established that Chapelle was technically insolvent. There was no evidence, however, that Chapelle had ceased operations at the time the guaranty was signed or that the corporation was somehow defunct. In fact, the accountant's affidavit upon which the *guarantors* rely creates the inference that Chapelle continued operating for some time after April 1993, when the guaranty and credit agreement were signed. Moreover, it is clear that Chapelle was still in existence when it filed an answer and counterclaim in this case.

Likewise, the addendum to the credit agreement and promissory note signed in November 1993 was signed by Dwight Sutherland, one of the guarantors and an attorney, on behalf of Chapelle. This, at a minimum, raises the inference that Chapelle was not defunct as of November 1993.

According to the guarantors, there would be no consideration whenever a bank or supplier extended payment schedules for any corporation that was "insolvent" in the sense that its liabilities exceeded its assets. This argument reads *Ludwick* to the broadest extent possible. However, the argument ignores that fact that the corporation in *Ludwick* had completely ceased operations nearly a year before the guaranty was signed.

The reasoning in *Home State Bank* appears more appropriate based upon the facts in this case. Here, as in that case, the fact that the debtor is currently without assets does not invalidate the forbearance when the debtor is still "alive" and presumably has the potential to earn assets to eventually pay off the debt. In this case,

Chapelle was still operating at the time the promissory note and guaranty agreement were executed. Therefore, there was some possibility that Chapelle could eventually pay its debts. We find that the guarantors' argument that the guaranty is without sufficient consideration is without merit.

## The discharge of the guarantors issue

Finally, the guarantors argue that even if the guaranty agreement was supported by adequate consideration, the subsequent modification of the credit agreement and promissory note discharged their guaranty.

During oral argument before this court, the guarantors announced that they had abandoned this argument. To do otherwise would completely ignore the provision in the guaranty agreement that the guarantors' liability would not be discharged or reduced by any renewal, extension, or modification of the payment of any part or all of the note whether with or without notice to or consent of the guarantors.

We agree with the guarantors that this issue is totally without merit and its abandonment was proper. There is no genuine issue of material fact, and the district court correctly granted Ryco summary judgment against the guarantors.

## Ryco's cross-appeal for attorney fees

Ryco also requested summary judgment on its claim for attorney fees under the guaranty agreement. That agreement specifically provided that the guarantors agreed to be liable for Chapelle's debt and "all attorneys' fees, court costs and other costs and expenses incurred by Creditor in connection with the collection of such Note . . . or any renewal, extension, modification or consolidation thereof."

At the time the guaranty agreement was executed, however, Kansas law invalidated such provisions. Specifically, K.S.A. 58-2312 (Ensley) provided, in pertinent part:

"Hereafter it shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorney's fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the payment of attor-

ney's fees shall be null and void; and that hereafter no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage, or other evidence of indebtedness by way of fees, expenses, costs or otherwise."

The Kansas Supreme Court has held that this provision invalidates attorney fee provisions in guaranty agreements. *Iola State Bank v. Biggs*, 233 Kan. 450, 464, 662 P.2d 563 (1983).

The 1994 legislature, however, substantially amended K.S.A. 58-2312. As amended, the statute now provides:

"Except as otherwise provided by law, any note, mortgage or other credit agreement may provide for the payment of reasonable costs of collection, including, but not limited to, court costs, attorney fees and collection agency fees, except that such costs of collection: (1) May not include costs that were incurred by a salaried employee of the creditor or its assignee; and (2) may not include the recovery of both attorney fees and collection agency fees."

This amendment went into effect on July 1, 1994. L. 1994, ch. 276, § 3. This was approximately 2 months after Ryco initiated this action.

The district court determined that the 1994 amendment did not apply retroactively to the guaranty agreement signed by the guarantors. The district court reasoned that retroactive application would "affect substantive rights which accrued and attached in the mutual promises of a contract entered before the law was changed."

Thus, the issue is whether the district court erred in finding that the 1994 amendment to 58-2312 applied prospectively only.

"The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates the legislature intended that it operate retrospectively. This rule is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties." *Chiles v. State*, 254 Kan. 888, Syl. ¶ 5, 869 P.2d 707, *cert. denied* 130 L. Ed. 2d 88 (1994).

Procedural statutes generally relate to "the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights." *Stevenson v. Topeka City Council*, 245 Kan. 425, 427, 781 P.2d 689 (1989). Substantive laws, however, establish the " 'rights and duties of parties.' [Citation omitted.]" *Rios v. Board*

*of Public Utilities of Kansas City*, 256 Kan. 184, 191, 883 P.2d 1177 (1994).

Ryco argues that the statute in question is only procedural or remedial in nature and, therefore, should be applied retroactively. Ryco relies on *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582 (1979). In *Nitchals*, the Supreme Court considered consolidated appeals involving the issue of the propriety of an award of attorney fees assessed against an insurance carrier after a recovery of damages was obtained by the insured from a third-party tortfeasor. The assessment was based upon K.S.A. 1977 Supp. 40-3113a, which contained a specific subsection requiring the district court to fix attorney fees to be paid proportionately by the insurer and the insured. Prior to that time, the Supreme Court determined that the insurance company's subrogation rights could not be reduced for attorney fees and expenses. See *Easom v. Farmers Insurance Co.*, 221 Kan. 415, 431-33, 560 P.2d 117 (1977).

In *Nitchals*, the Supreme Court acknowledged the substantive nature of the insurance carrier's subrogation rights when recovery is made against a third party. 225 Kan. at 291. The court cited numerous foreign cases applying such attorney fee provisions retroactively, noting that "[t]he rationale of the decision in these cases is that statutes providing for the recovery of attorney fees affect the remedy only and do not change the liability provided for in the [insurance] contract." 225 Kan. at 292. Finally, the court concluded that the insurance companies' vested rights were not affected because those rights did not vest until after "a recovery by the insured from the third-party tortfeasor by judgment, settlement, or otherwise." 225 Kan. at 294. In the cases before the court, none of the insureds obtained a judgment or settlement until after the effective date of K.S.A. 1977 Supp. 40-3113a. 225 Kan. at 294-95.

Kansas appellate courts have found that a number of different types of statutes are procedural or remedial and, therefore, can be applied retroactively. For example, amendments to the Workers Compensation Act transferring review from the district courts to the Workers Compensation Board were found to be procedural in nature. *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. at 191-92. In *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655,

831 P.2d 958 (1992), the Supreme Court held that amendments to K.S.A. 60-3303 were procedural in nature and could be retroactively applied without violating vested rights. 250 Kan. at 670. A statutory amendment removing a technical jurisdictional defense also was considered procedural and could be retroactively applied. *Florida Dept. of HRS v. Breeden*, 21 Kan. App. 2d 490, 500, 901 P.2d 1357 (1995).

*Nitchals* is the only Kansas case dealing with the issue of statutory attorney fees. The facts in *Nitchals* are clearly distinguishable from the present case. In *Nitchals*, the insurance carrier's rights to subrogation were primarily statutory in nature. Therefore, the amendment of the statute was, in effect, remedial in nature. Moreover, the insurance company's rights were not vested at the time of the amendments.

In this case, the liability in issue is limited to the language of the contract. " ' "The liability of a guarantor upon an obligation cannot be extended by implication, and he should not be held beyond the precise terms of his contract." [Citations omitted.]' " *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 243, 898 P.2d 1145 (1995). At the time the contract was signed in this case, Kansas statutes nullified the attorney fee provision and made that provision void and unenforceable. The guarantors' liability, therefore, was limited to the underlying debt and interest thereon.

To permit the retroactive application of K.S.A. 58-2312 would, in essence, resurrect the attorney fee provision which was void at the time it was signed. Retroactively applying the statute results in an increase in the obligations assumed by the guarantors long after the documents were signed and after Chapelle went into default. This circumstance makes the statutory amendment more substantive than procedural or remedial, and, thus, operates prospectively.

Ryco also argues that the retroactive application of K.S.A. 58-2312, as amended, does not prejudice the guarantors because the unambiguous terms of the guaranty agreement provides for liability for attorney fees. While the original agreement provided for the payment of attorney fees, that provision was null and void the instant the contract was signed. Had the statute remained unchanged, Ryco could not have legally collected those fees. Therefore,

the 1994 amendments do, in fact, expand the guarantors' liability beyond that which existed in 1993.

Affirmed.