(48 P.3d 1)
No. 87,405

ALLIED MUTUAL INSURANCE COMPANY and REBECCA S. REGAN, *Plaintiffs*, v. NATHAN A. MOEDER, *Defendant/Third-Party Plaintiff/Appellant*, v. SHELTER MUTUAL INSURANCE COMPANY, *Third-Party Defendant/Appellee*.

Opin-
ion filed June 7, 2002.

*Douglas S. Wright*, of Douglas S. Wright, P.A., of Topeka, for the appellant.

*Timothy A. Schultz*, of Gehrt & Roberts, Chartered, of Topeka, for the appellee.

Before LEWIS, P.J., BRAZIL, S.J., and GLENN D. SCHIFFNER, District Judge, assigned.

LEWIS, J.: This is a dispute between a third-party plaintiff, Nathan A. Moeder, and his insurance carrier, Shelter Mutual Insurance Company (Shelter). Moeder appeals the trial court's decision holding that Shelter had no coverage on the vehicle he was driving and no obligation to defend Moeder in a lawsuit filed against him by Rebecca S. Regan and Allied Mutual Insurance Company (Allied). The only parties to this appeal are Moeder and Shelter. Plaintiffs Regan and Allied did not file briefs in this case and are not parties to this appeal.

Moeder acquired a 1991 Chevrolet S-10 pickup truck on May 15, 1997. On June 7, 1997, he collided with Regan's vehicle. The parties all agree that Moeder was solely at fault in the accident.

Shelter insured Moeder on his parents' automobile policy; the S-10 was not listed as a covered vehicle. This was apparently due to the fact that the Moeder family did not notify Shelter that they had acquired the S-10 until 3 days after the accident. At the same time as they gave Shelter notification of the S-10, the Moeders paid the necessary premium to insure it.

The insurance policy required that Moeder notify Shelter within 30 days of the acquisition of an additional vehicle for insurance coverage to apply to that vehicle. There is no question that notification was made within the 30-day period specified in the policy.

However, this lawsuit revolves around a provision in the insurance policy which stated it would cover a newly acquired automobile if it "is an additional **auto** and [Shelter] insure[s] all **autos** owned in whole or in part by [Moeders] on date of such acquisition." The policy also defines "auto" as "a self-propelled, land motor vehicle with at least four wheels, not operated on rails or crawler treads." The Moeders' problem is that while they had most of their vehicles, including the S-10, insured with Shelter, they also owned a 1995 Kenworth tractor-trailer, which was insured not by Shelter but by Great Western Casualty Company.

Regan and Allied filed a lawsuit against Moeder to recover damages from the accident. Moeder made a demand on Shelter to defend him and indemnify him under the insurance contract. When Shelter discovered that the Moeders owned a 1995 Kenworth which was not insured by it, it refused coverage and refused to defend him. It did so on the basis of the provision in its policy quoted above which makes it clear there would be no coverage *unless* Shelter insured all autos owned in whole or in part by the Moeders.

After Shelter was made a third-party defendant by Moeder, the parties stipulated that the damages amounted to $6,500 and that Moeder was wholly at fault in the accident. The parties also agreed that no one would pursue damages until the trial court determined the issues on the dispute between Moeder and Shelter and a final order was issued.

This is an action in which summary judgment was granted in favor of Shelter. Ultimately, the trial court granted summary judgment to Shelter and against Moeder. It concluded the insurance policy was unambiguous and since the Moeders did not have all their automobiles insured by Shelter, Shelter had no obligation to provide coverage on the S-10 pickup.

Our standard of review of a grant of summary judgment is as follows:

"The standard of review for issues decided on summary judgment is well known. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with the evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Davis v. Miller*, 269 Kan. 732, 737, 7 P.3d 1223 (2000).

It was Moeder's contention that Shelter was required to provide coverage for the S-10 under the policy's automatic insurance provision and also had a duty to defend him in the lawsuit filed against him by Regan. The interpretation of a contract is a question of law. This court may construe the instrument de novo and determine its effect regardless of the trial court's interpretation of the agreement. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998).

The appellate courts of this state have indicated that an insurance company's duty to defend is controlled as follows:

" 'The duty to defend and whether the policy provides coverage are not necessarily coextensive. The duty to defend arises whenever there is a "potential of liability" under the policy. The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover. Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, there would be no potential of liability under the policy for intentional acts. Where the complaint alleges both a negligent and intentional act, these alleged facts give rise to the potential for liability, and the duty to defend arises. [Citation omitted.]' " *Quality Painting, Inc. v. Truck Ins. Exchange*, 26 Kan. App. 2d 473, 476, 988 P.2d 749 (1999) (quoting *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 246, 865 P.2d 182 [1993]).

Moeder maintains the Shelter policy was ambiguous as to the coverage. We disagree. For a contract to be ambiguous, it must contain language of conflicting meaning based on a natural and reasonable interpretation of the agreement's language. *Brumley v.*

*Lee*, 265 Kan. 810, 813, 963 P.2d 1224 (1998). The contract is ambiguous if, after applying the rules of interpretation to the face of the instrument, there remains a genuine uncertainty as to which of two or more meanings is proper.

Our job is to use common sense and not to strain to create an ambiguity in a written instrument when one does not exist. *Eggleston v. State Farm Mut. Auto. Ins. Co.*, 21 Kan. App. 2d 573, 574, 906 P.2d 661, *rev. denied* 257 Kan. 1091 (1995). The fact that the parties do not agree over the meaning of the terms does not in and of itself prove that the contract is ambiguous. *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 23 Kan. App. 2d 30, 36, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997).

Under the law, coverage clauses in automobile policies are to be liberally construed in favor of coverage. The insurance company is required to defend any limitations on that coverage by clear and explicit terms. See *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992).

In this case, there is no dispute that the Moeders owned the Kenworth on the date they acquired the S-10. It is equally undisputed that the Kenworth was not insured by Shelter at that time. Under the language of the policy, the terms of the policy clearly exclude coverage on the S-10 because all the motor vehicles were not insured by Shelter on the date of acquisition of the S-10. We hold the language in the automatic insurance provision is not ambiguous and clearly shows that Shelter had no duty to defend or to provide coverage in this action.

There are disputed contentions in the record concerning Shelter's capability or desire to insure an 18-wheeled vehicle such as the Moeders' Kenworth. Moeder contends the proof would show that Shelter told him it was not capable of providing such coverage. Moeder extends this argument to ultimately conclude that if Shelter could not provide coverage for the Kenworth, that somehow voided the language in the automatic insurance clause.

We find no legal authority that construes the automatic insurance clause to ignore an owner's separately insured vehicle under any circumstances. This argument has no merit.

In this action, the expectation of coverage is clear. A reasonably prudent person, if he or she read the newly acquired automobile clause in the policy, would understand that the policy provided no coverage unless all the vehicles owned by the Moeders were insured by Shelter at the time the S-10 was acquired. We hold the trial court did not err in concluding that Moeder was not entitled to coverage under the Shelter policy on the newly acquired S-10.

Finally, Moeder argues that Shelter waived its right to invoke the automatic insurance provision because it knew he was buying the Kenworth in 1996 and, despite this knowledge, accepted a premium on the S-10. We disagree.

Kansas cases hold that waiver and estoppel cannot be used to expand coverage of an insurance policy where the policy unambiguously excludes coverage for the insured's claim. See *Hillman v. Colonial Penn Ins. Co.*, 19 Kan. App. 2d 375, 377, 869 P.2d 248, *rev. denied* 255 Kan. 1001 (1994); *Western Food Prod. Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375, 381, 699 P.2d 579 (1985). Since the insurance policy unambiguously excludes coverage of the claim made in this case, Moeder may not invoke the principles of waiver or estoppel.

The fact is, Shelter did not owe a duty to defend Moeder because there was no potential of liability under the policy. We further find no evidence that Shelter breached a covenant of good faith and fair dealing.

The trial court's grant of summary judgment to Shelter is affirmed.

Affirmed.