No. 22,849.

THE KANSAS MILLING COMPANY, *Appellee*, v. JOHN A. EDWARDS, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Wheat—Accidental Destruction of Wheat—Failure to Deliver—Instructions—Findings of Jury.* The omission of the trial court to give an instruction as to the effect of the accidental destruction of wheat out of which it was claimed by a seller that it had been agreed he should fill an order, because in this way a delay in delivery which was desired by the purchaser could be arranged, is held to have been rendered immaterial by a finding of the jury that the buyer had at no time advised delay in making the shipment.

2. SAME—*No Prejudicial Error in Court's Rulings.* Various trial rulings are held not to afford a basis for reversal.

3. SAME—*Set-off Allowed—Judgment Modified.* A claim of the defendant for an allowance on account of underpayments in shipments of wheat, having been withdrawn from the jury for want of evidence as to the grades and weights, it is held that an allowance should have been made on the basis of evidence on the subject supplied by the plaintiff.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed March 12, 1921. Modified.

*J. Graham Campbell, Ray Campbell,* both of Wichita, and *H. J. Hodgson,* of Eureka, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Kansas Milling Company sued John A. Edwards for his failure to carry out a contract of July 15, 1914, for the delivery to it in that month of 5,000 bushels of wheat at 64 cents. Judgment was rendered for the plaintiff and the defendant appeals.

1. The entering into the contract and the nondelivery of the wheat were admitted. The defendant denied liability on the ground that in the latter part of the month named it was agreed between the parties that the order should be filled from wheat then in the stack, grown upon certain land owned by him; that the contract thereby became one for the sale of that particular wheat, and that through no fault of his this wheat was destroyed by fire before the time for delivery arrived. The court gave no instructions regarding the legal effect upon the rights of the parties where the performance of a contract becomes impossible, and submitted no question to the jury in that connection. Its failure to do so is the principal basis of the defendant's appeal. On this subject the defendant introduced evidence tending to prove these facts:

On July 23, 1914, he wrote the plaintiff that he would be unable to fill the order from the source he had intended, and five days later he asked an extension through August and over September. The plaintiff replied that it was compelled to ask delivery by August 10. On August 5, 6 or 7 he talked with the agent of the company and told him he could fill the contract. The agent said not to ship the wheat; that the company could not take it; that there was an embargo on, war was about to break out, there was financial havoc in Wichita, wheat had dropped and there was no market for it, and the plaintiff was now willing to extend the contract through August or even sixty days. The defendant then said that he had 5,000 bushels ready for delivery and could not hold it as he had no granary and would have to deliver it or dispose of it; that he had some unthreshed wheat on his Snake Creek ranch which he could deliver when it was threshed. The agent said the company would take 5,000 bushels of that wheat—to let it stay in the stack—that it could not take it then, and that the wheat market was way down and payment of wheat drafts was being refused. The defendant agreed to keep 5,000 bushels of the Snake Creek ranch wheat in stack for the plaintiff—keep it and thresh it when it was wanted, provided it would not cost him anything to do it—provided the plaintiff would take care of it and look after him. The agent agreed to this proposal, saying that the company would make good whatever extra expense or trouble to the defendant was thereby occasioned. It was by reason of

this arrangement that the defendant did not make delivery before August 10 of the 5,000 bushels contracted for. The fire referred to took place in late August or early September, some 14,000 or 15,000 bushels being destroyed.

It is a familiar rule that performance of a contract for the sale of a particular article—as for instance the crop from a specified tract — is excused by the accidental destruction thereof. (35 Cyc. 246; 6 R. C. L. 1005; 23 R. C. L. 1431; Note, L. R. A. 1916F 10, 20.) The contract here sued upon was not of that character at its inception, nor is it clear that it became such by subsequent agreement of the parties, assuming that the defendant's version of the later negotiations is correct. Upon that assumption the plaintiff was not seeking to buy 5,000 bushels of the wheat from the Snake Creek ranch; the defendant might have filled the order with any wheat he was able to procure. The arrangement was entered into to meet the practical difficulties of the situation. The defendant was ready to make immediate delivery of other wheat, but the plaintiff was not able then to receive it. The defendant could not store or otherwise hold the wheat he was then ready to deliver, but could hold the wheat he had in stack and fill the order from this after it was threshed. So for the accommodation of . the plaintiff it was agreed that there should be a delay in the shipment, and as this could only be accomplished by the use of the unthreshed wheat, that should be held for the purpose, the plaintiff indemnifying the defendant against any resulting expense or trouble. Whether or not these circumstances would bring the case within the rule relating to contracts for the sale of specific articles, there is room for a plausible contention that the defendant ought not to be held liable for the nondelivery of this wheat as the result of an accidental fire, because delivery would have been made from other wheat if the plaintiff had been ready to accept it.

The necessity of determining the rights of the parties under these conditions is in our judgment dispensed with by the action of the jury. The whole defense is based upon the theory of a delay in delivery having been arranged for the benefit of the plaintiff. At the request of the defendant this question among others was submitted to the jury, a negative answer being returned: "Did plaintiff at any time advise defendant to

hold back and not make shipment of any of the wheat under the 5,000-bushel contract of July 15, 1914?" The answer to this explicit question could not have been affected by the omission of the court to give an instruction relating to the effect of the fire, and it necessarily negatives the claim of the defendant, by deciding that no delay in shipment was made for the accommodation of the plaintiff. The defense rests directly upon the theory that the defendant was ready and willing to deliver and because of the inability of the plaintiff to accept delivery a delay was arranged for its accommodation by the agreement to fill the order from the unthreshed wheat. Only on the hypothesis of the plaintiff having requested a delay could it be reasonably contended that the contract became one for the sale of a specific article—wheat from a particular tract. The finding of the jury was therefore fatal to the establishment of the defense relied upon.

The jury were instructed that the plaintiff could not recover if it had released the defendant from furnishing the wheat at any time when the defendant was ready, willing and able to comply with the terms of the contract. The evidence in behalf of the defendant was that early in August he had notified the plaintiff that he was ready to fill the contract—to ship the wheat—and had been told not to do so because the plaintiff could not take it. Such a transaction would have amounted for the time being to a release of the defendant from his obligation and the general verdict necessarily implied a finding that it had not taken place.

2. The judgment was based upon the market price of wheat on October 1, 1914. The defendant complains of this on the ground that at later dates the plaintiff wrote him letters asking a settlement, which used language indicating an assumption of the deal still being open; that a finding of the plaintiff's having bought in the wheat on that day was not warranted; and that the evidence of the market price of wheat on October 1 did not apply specifically to the place of shipment— Englewood. There was evidence in substance that on October 1 the plaintiff bought 5,000 more bushels of wheat than it would otherwise have done because of the nonreceipt of that amount on this contract; that some time after that the defendant asked that the market price on that day, which was

92.3, be used in settling this deal. Whether the subsequent letters indicating a willingness to accept wheat in settlement were sufficient to counteract the effect of what had already been done was a fair question for the jury. The particular question in reply to which the market price of wheat on October 1 was stated did not specify Englewood, but inasmuch as the question immediately preceding it was whether the witness was familiar with the market value of wheat "at Galveston destination weights and destination grades, f. o. b. Englewood, Kansas, in 1914," there was no difficulty in inferring that the price given had relation to shipments from that point.

The jury returned a negative answer to this question, submitted by the defendant: "Did the plaintiff admit to the defendant in January, 1915, that there was only 3,850 bushels of wheat remaining due it on the 5,000-bushel contract of July 15th, 1914?" Complaint is made that this finding is against the undisputed evidence because a letter was produced written by the defendant on December 3, 1914, containing the language "the amount of wheat remaining due on the old contract, after the overages from the other contracts are figured in, is around 3,850 bushels as these statements will show you." It will be observed that the question specifically related to January, while the letter was written in December.

Complaint is made of the refusal of instructions asked concerning the authority of a person whose agency for the milling company was alleged by the defendant and denied by the plaintiff. Inasmuch as the jury specifically found that he was the plaintiff's agent, the omission was immaterial.

An attempt was made by the defendant to impeach the verdict by the affidavit of a juror as to how an instruction had been understood by the jury. This of course was ineffectual. (*Perry v. Bailey,* 12 Kan. 539, 545; 29 Cyc. 984.)

3. As already indicated, the defendant interposed two set-offs arising upon other contracts. One of them was allowed and the allowance has become final. The other was withdrawn by the trial court from the jury and the defendant appeals from its disallowance. The defendant pleaded that upon five carloads of wheat he had been paid $226.37 less than the actual weights entitled him to. He undertook to prove the weights by his own testimony from knowledge derived from

the original scale tickets, which had been turned over to the plaintiff. An objection to his testimony was sustained and for want of evidence on this point he was denied recovery on this cause of action. Inasmuch as the abstract discloses no showing under oath as to what his testimony would have been the ruling excluding it cannot be reviewed. (Gen. Stat. 1915, § 7209.) However, the plaintiff's cashier while testifying in its behalf identified a memorandum showing the grades and weights, which was admitted in evidence without objection as a part of his cross-examination, on the basis of which the defendant appeared to have been underpaid by $146.58. The plaintiff suggests that the court properly held that destination weights controlled while the memorandum was of weights at the point of shipment, and therefore irrelevant. The court, however, instructed the jury that nothing could be allowed the defendant on this claim because he had wholly failed to show the grades and weights of the wheat at the point of shipment. Moreover, in the absence of other evidence there would be no presumption of a loss or deterioration in transit (*Mountain City Mill Co. v. Link Milling Co.*, 92 Mo. App. 474), and furthermore the figures on the plaintiff's memorandum appear to relate to destination weights and grades. Inasmuch as the only evidence on the point in controversy came from the plaintiff the defendant should have been allowed the amount thereby shown to be due him—$146.58 and interest.

The cause is remanded with directions to modify the judgment by deducting the amount indicated.