No. 29,932.

H. M. WHEELER, *Appellee,* v. ALBERT C. BARR, *Appellant.*

(4 P. 2d 441.)

Opinion filed November 7, 1931.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellant.
*James L. Hogin,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action grew out of an exchange of chattel property. Plaintiff traded thirty-seven sheep for two unbroken fillies. The sheep were in Kansas City; the fillies were at defendant's farm in Coffey county.

According to plaintiff's evidence, which the jury chose to believe, after some fruitless negotiations the plaintiff and defendant made a bargain by a telephone conversation to this effect:

Plaintiff testifying:

"He [Doctor Barr] said: 'We are so near together on the trade, it looks as though we ought to get together.' I says, 'I can't give you thirty-nine sheep for your fillies; I will give you thirty-five.' . . . He says, 'If you want to take out two of the best ones, you may.' I said, 'All right. You have agreed to go down with the sheep and come back with the fillies, haven't you?' He says, 'Yes.' I says, 'I don't need to go along or send anybody?' He says, 'No, you don't. We can bring them.' I says, 'All right. I will give you thirty-seven head of them if you will go back with them and see that the fillies are

brought back safe and sound to me.' He said he would. I says, 'All right. We will trade.' "

It was conceded that the defendant Barr was to employ a truck driver to haul the sheep to Coffey county and bring back the fillies to Kansas City, and that plaintiff and defendant would each pay half of the truck driver's compensation.

The morning after the bargain was made by telephone plaintiff and defendant exchanged bills of sale, and each reserved a copy of the bill of sale he had given his adversary. These bills of sale were in the usual form, reciting that the vendor had "bargained, sold, transferred and conveyed and set over" unto the vendee the described live stock. The bills of sale were silent as to where delivery of the live stock should be made.

Defendant and the truck driver took the sheep to Coffey county and there loaded the fillies on the truck for the return journey. En route for Kansas City one of the fillies broke her neck. Neither was halter broken, which fact was known to plaintiff when he traded for them. Negligence in transporting the fillies was not alleged, nor is it intimated that it existed.

Plaintiff brought this action by filing a bill of particulars in the city court of Kansas City, alleging defendant's breach of contract to deliver one of the fillies. No other pleadings were filed. From a judgment in the city court the cause was appealed to the district court where the jury returned a verdict for plaintiff in the sum of $200 as the value of the undelivered filly, and judgment was entered accordingly.

Defendant appeals, emphasizing the point that title to the fillies passed by execution and exchange of the bills of sale. That point of law is well settled by our own decisions and by the textbooks. (*Davison v. Davison,* 125 Kan. 807, 266 Pac. 650; 24 R. C. L. 17.) But the contract of bargain and exchange also stipulated that defendant was to see that the fillies were brought back safe and sound to plaintiff. Did the later execution and exchange of the bills of sale which were silent as to time and place of delivery supersede defendant's earlier oral obligation made over the telephone to see that the fillies were brought back safe and sound, as testified to by plaintiff? This court holds not. In the analogous case of *Bigler v. Hall et al.,* 54 N. Y. 167, the contract of bargain and sale stipulated that the vendors were to deliver certain logs on the bank of a river,

and that the vendee was to pay $16 per 1,000 feet when account of measurement was rendered. The logs were measured and paid for. By a sudden freshet a portion of the logs were lost. In an action to recover the price paid for the logs which were lost the vendee prevailed, and on appeal from the judgment of the general term of the supreme court, the commission of appeals affirmed the judgment, holding that the contract to deliver was absolute, and defendants were liable, although the loss occurred without negligence upon their part; also, that it was immaterial whether or not the contract was considered as an executed contract·of sale, and whether the title passed to plaintiff or not, as the absolute and qualified obligation to deliver still existed, and defendants' failure to fulfill rendered them liable. In the opinion it was said:

"The points litigated seem to have been whether the defendants were absolutely liable for all of the logs that had not been delivered, on the construction of the agreement that he had bound himself, without any qualification of his obligation, to make *a delivery of all,* or whether they were only liable for such as had been lost or not delivered through their fault or negligence. I have consequently not considered it. It seems to me, however, immaterial. If it can be so construed, and if the logs mentioned in the contract became the property of the plaintiff as soon as they were measured and paid for by him, as the defendants claim on this appeal, it does not follow, as they say, that 'from that time they were at his risk.' The absolute and unqualified obligation of the defendants to *deliver* them at the place designated for that purpose still existed, and their failure to fulfill and discharge it, and their duty growing out of it, made them liable for the damages growing out of its breach.

"In any aspect of the case the plaintiff was entitled to recover." (p. 171.)

And so here. While the execution and exchange of the bills of sale transferred the title to the fillies, yet defendant also bound himself to see that the fillies were brought back from Coffey county safe and sound. His obligation to do so was absolute and unqualified. He knew the fillies better than any stranger could know them. He knew they were not even halter broken. Yet he undertook to see that they were transported to Kansas City safe and sound. Presumably he knew he was undertaking a risk of no small extent—haltering, loading, and tying in a truck a pair of four- or five-year-old fillies which had never been broken to man's control, and transporting them 75 or 100 miles over the public highway. Anybody who knows the nature of unbroken horses would know that there was a considerable probability of their self-destruction in their fright and

terror at such an unfamiliar experience. While negligence was neither pleaded nor proved, the element of negligence was not necessary to the imposition of liability on defendant under his contract of safe and sound delivery.

Appellant cites the case of *Milling Company v. Edwards*, 108 Kan. 616, 197 Pac. 1113, where a vendee's failure to deliver 5,000 bushels of wheat according to his contract was excused because the wheat was accidentally destroyed by fire. A careful reading of that case reveals no analogy to the question of present concern—which is the fair import and binding significance to be given to the oral undertaking of defendant to deliver the horses safe and sound in Kansas City. It may be conceded that a public carrier like a railway company, or the truck driver in this case, if trucking was his regular business, would not be liable for the loss of this filly, since carriers, while held to a high degree of diligence in the discharge of their functions, are not insurers and consequently not liable in the absence of negligence pleaded and proved. Insurers, on the other hand, are liable at all events; that is the sort of obligation they undertake; and that is the sort of obligation defendant undertook if the simple language of the telephone bargain be accorded its plain and unequivocal intendment.

It is contended, however, that the telephone conversation was not admissible in evidence, for the reason that it was merely part of the preliminary negotiations which culminated in the written contract— the bills of sale which the parties executed the next morning. We hold otherwise. The bills of sale contained nothing except the proper recitals to transfer title. Their execution did not preclude the admissibility of the other agreements included in the telephone conversation.

Error is also assigned on the admission of evidence tending to show the fraudulent alteration of one of the bills of sale. These were prepared in typewriting. In the one transferring the title to the thirty-seven sheep from plaintiff to defendant there was a pen-and-ink insertion that delivery of the consideration therefor, to wit, the two fillies, was to be made at defendant's farm in Coffey county, Kansas. This evidence was admissible. Moreover, aside from an inference discreditable to defendant's veracity which the jury might draw from the incident, it was not a matter of importance in this lawsuit.

Error is also assigned on the trial court's instruction touching the measure of damages. It reads:

"6. You are also to determine in this case the value of the horse not delivered to the plaintiff in this case, and you will have to reconcile the evidence. The plaintiff claims $200 and it is up to you to decide whether that was the value placed upon the filly by the defendant, himself. If you find that to be true; if the defendant did place that value of $200 upon the filly, that is the value by which you should be guided in this case if you should find the plaintiff is entitled to recover in this case."

Appellant contends that the measure of damages was not necessarily the value which he had placed on the filly at the time the negotiations to trade the pair of fillies for plaintiff's sheep were pending. We see nothing wrong with the rule stated in the court's instruction. It is not suggested that there was a regular market value for unbroken fillies. (*St. L. K. & A. Rly. Co. v. Chapman*, 38 Kan. 307, 16 Pac. 695.) Furthermore, defendant assured the plaintiff the fillies were worth $200 each. Plaintiff never saw the fillies and necessarily accepted defendant's word for that statement. In the nature of the case plaintiff could not adduce other evidence of the value of the filly than defendant's representation of what she was worth.

No substantial error in this case appears and the judgment is therefore affirmed.

SMITH, J., dissenting.