(986 P.2d 391)
No. 80,535

Ray C. Clark, *Appellant,* v. Wallace County Cooperative Equity Exchange, *Appellee.*

Opinion filed September 3, 1999.

*Paul T. Maricle,* of Rossi & Maricle, of Goodland, for the appellant.

*Terry D. Bertholf,* of Hutchinson, for the appellee.

Before Lewis, P.J., Rulon, J., and Thomas H. Bornholdt, District Judge, assigned.

Lewis, J.: Ray C. Clark is a farmer. The Wallace County Cooperative Equity Exchange (Coop) operates, among other things, a grain elevator through which it buys and sells grain. In January 1995, Clark and Coop entered into a written agreement in which Clark agreed to sell Coop 4,000 bushels of corn to be delivered after the crop was harvested. At the time the contract was made, there may have been corn planted somewhere in Kansas, but it

would have been far short of maturity. In September 1995, there was a freeze in the area, which severely damaged the corn crop. As a result of this freeze, Clark raised only 2,207.41 bushels of corn, which he delivered to Coop. Clark then maintained he was excused from delivering the remaining 1,392.59 bushels (after an allowed 10% reduction) because of the freeze. Coop insisted he was not excused and held the cost of the shortage out of the grain sale by Clark to Coop. This action was brought by Clark to recover the $1,622.97 that Coop withheld from his grain sale.

First, we note that these are rather common agreements used in the grain business. Anyone involved in this sort of an agreement realizes that one of the big risks is that the farmer may not be able to grow sufficient grain to deliver the required number of bushels. Clark seeks to be excused from his obligation to deliver because his crop was damaged by the weather. We suspect that if we adopted his reasoning, we would put an end to trading grain in this manner throughout the entire state of Kansas. It would have the effect of taking all the risk away from the farmer and placing the entire risk of loss on the grain elevators and, in fact, creating a potential situation where grain elevators could be bankrupted in the event of a large area crop loss.

Clark first argues that K.S.A. 84-2-613 excuses his performance. That particular provision of the Uniform Commercial Code (UCC) provides that "[w]here the contract requires for its performance *goods identified when the contract is made*, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer . . . (b) if the loss is partial . . . the buyer may . . . accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller." (Emphasis added.)

We conclude this particular statute does not relieve defendant from his obligation under the agreement in question because the goods were not identified at the time the contract was made.

In *Milling Co. v. Edwards*, 108 Kan. 616, 618, 197 Pac. 1113 (1921), the Kansas Supreme Court stated that in order to constitute a contract for the sale of a certain commodity under which the performance of delivery is excused by the destruction of the com-

modity, the contract must specify the land on which the commodity is to be grown.

Since the *Edwards* decision, the UCC was adopted in Kansas. There are, to the best of our knowledge, no post-UCC cases from Kansas which address this issue. However, we focus on a decision from the state of Washington. In *Colley v. Bi-State, Inc.*, 21 Wash. App. 769, 586 P.2d 908 (1978), Colley failed to deliver the remaining bushels of wheat due under certain contracts with Bi-State, Inc. Colley was short on wheat and did not raise enough wheat to make delivery due to a hot, dry summer. He argued that because of the hot, dry summer, that Washington UCC § 2-613 excused delivery of the remaining wheat. The Washington court held that the contract did not expressly require Colley to grow the wheat himself or to grow it in any particular location, only to deliver 25,000 bushels to the elevator. Under those circumstances, the Washington court concluded that UCC § 2-613 did not excuse the delivery performance of the farmer. The court also indicated that the parties to this type of agreement intend to be bound to it regardless of the success of the seller's crop. 21 Wash. App. at 773-74.

We believe that the Washington decision is soundly reasoned and should be adopted as the law of this state.

Clark argues the trial court should have looked at the parties' intent when the agreement was made. However, at the same time, Clark stipulates that the agreement was complete, unambiguous, and free of uncertainty. Whether a contract's terms are ambiguous is a question of law to be decided by the court. If the contract is found to be unambiguous, the court must interpret the contract solely within its four corners, and extrinsic evidence is inadmissible. *U.S. v. Mintz*, 935 F. Supp. 1178, 1179 (D. Kan. 1996). Insofar as Clark's specific complaint is concerned, there is no evidence in the record on appeal to indicate that Clark ever attempted to submit evidence of trade usage for the parties' intent or that the trial court ever denied the admission of such evidence. Under these circumstances, an appellant cannot raise a point for the first time on appeal, *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, Syl. ¶ 8, 912 P.2d 729 (1996), and has an obligation to designate a record suf-

ficient to establish the claimed error. *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994). We hold that a seller of grain is not excused by K.S.A. 84-2-613 from the delivery performance specified in an agreement of this nature when the grain is not identified by a specific tract of land on which it is to be grown.

Clark next argues that K.S.A. 84-2-615 provides some relief. Again, we do not agree.

K.S.A. 84-2-615 reads as follows:

"Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

(a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale *if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made.*" (Emphasis added.)

The first element which must be established to apply the statute quoted above is that performance must be impracticable. We addressed the issue of impracticability in *Sunflower Electric Coop., Inc. v. Tomlinson Oil Co.*, 7 Kan. App. 2d 131, 638 P.2d 963 (1981), *rev. denied* 231 Kan. 802 (1982). In that case, we indicated there was a difference between subjective and objective impracticability. This difference can be illustrated by an individual who says "I cannot do it" versus a statement to the effect that "the thing cannot be done." Only objective impracticability may relieve a party of his or her contractual obligation. 7 Kan. App. 2d at 139. In this case, there was no objective impracticability since the corn was not identified to be from specific land. The thing Clark had to do in this case was deliver 4,000 bushels of corn to the elevator. He could have done this. This is shown by the fact that Coop was able to cover the shortage on the instant contract by acquiring corn from another source. The fact is, Clark did not want to deliver the grain, but he had the ability to do so by purchasing grain to replace the grain he did not raise.

The Kansas comments to K.S.A. 84-2-615 state: "A seller . . . will not be excused under this section if (1) the non-occurrence of the contingency was the seller's fault; (2) the seller had reason to know of the impracticability (*i.e.*, the contingency was

foreseeable); or (3) the seller assumed the risk of the contingency." We do not deem it difficult to conclude that farmers in Kansas can foresee late September freezes which will reduce their corn yields. It has happened a number of times. If we were to excuse Clark from his obligation to deliver on the agreement, we would allow a farmer to enter into a forward grain contract on unspecified land, gamble on the extent of his supply, being aware of the fact that he may not raise sufficient grain, and then escape with impunity when his grain crop proves inadequate.

In addition, official UCC comments (5) and (9) to K.S.A. 84-2-615 refer to the concept of identifying the source of supply of the crop to be sold. As we pointed out above, the contract before this court did not identify a particular source of supply or a particular area where the corn was to be grown.

We hold that Clark's performance on the grain sales agreement in question was not excused by the provisions of K.S.A. 84-2-615.

Affirmed.