John Richard Ludbrooke YOUELL, individually and on behalf of certain Underwriters at Lloyd's, London subscribing to Certificate No. DOM 3000357, Plaintiff,

v.

Cynthia GRIMES, designated representative of Stoico Restaurant Group, Inc., and Stoico Restaurant Group, Inc., Defendants.

Case No. 00–2207–JWL.

United States District Court, D. Kansas.

Aug. 19, 2002.

**1170**

Mark A. Shaiken, David E. Everson, Jr., Greta Ann McMorris, Stinson Morrison Hecker LLP, Kansas City, MO, Nancy K Tordai, Anastasia Markakis Nye, Hanson & Peters, Barrington, IL, for plaintiff.

John J. Miller, Thomas M. Franklin, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed a motion for summary judgment (Doc. 192) arguing that uncontroverted facts show that Stoico Restaurant Group, Inc. ("SRG") breached an insurance contract by admitting liability in a state court securities fraud case and that the underwriters of the insurance contract, Syndicate No. 79 of Lloyd's, London (the "underwriters"), therefore, are relieved of their duty to pay under the contract. Defendants, on the other hand, argue that SRG, acting through its designated representative, had the duty to pursue claims against officers and directors for wrongdoing and that SRG's admission of liability was consistent with this strategy to recover from SRG officers and directors. Defendants also argue that the underwriters breached their duties to the insured before SRG breached the contract and that, therefore, the underwriters have no right to refuse to pay a claim under the contract. As explained below, the court concludes that while SRG, acting through its designated representative, is entitled to pursue claims against SRG officers and directors, the actions taken by its designated representative breached the plain language of the insurance contract and relieved the underwriters of any duty to pay under the contract. The court also concludes that defendants failed to point to evidence indicating that the underwriters breached a duty owed to the insured. Plaintiffs also filed a motion to strike affidavits and exhibits submitted by defendants (Doc. 211).

• Undisputed facts

The underwriters issued a Directors and Officers and Company Reimbursement Indemnity Insurance Certificate ("the contract") to SRG, effective from December 11, 1996 to December 11, 1997. The contract provides coverage for losses sustained by SRG or its directors and officers for claims made against SRG or its directors and officers for "wrongful acts." The insurance contract contains a provision entitled "Assistance, Cooperation and Subrogation" (the "cooperation clause") which provides:

> The Assureds agree to provide Underwriters with such information, assistance and cooperation as Underwriters or their counsel may reasonably request, and further agree that they shall not take any action which in any way increases Underwriter's exposure under this Certificate.

On August 13, 1997, a lawsuit captioned *Balee v. Primeline Securities Corporation* was filed in Kansas state court against SRG and SRG directors and officers alleging that they committed acts of securities fraud in connection with an initial public offering of stock on December 19, 1996 (the "IPO"). The parties agree that the acts alleged in the complaint occurred during the period of time covered by the contract. Michael Thompson of the Blackwell Sanders firm was retained to defend

SRG and its directors and officers.[1] The underwriters consented to the retention of Blackwell Sanders as defense counsel in the *Balee* lawsuit. Mr. Thompson negotiated a settlement with the *Balee* plaintiffs on behalf of SRG and SRG officers and directors.[2] The parties agreed to settle the claim for a sum of $410,000, subject to the parties agreeing upon certain details, executing various documents, and obtaining consent of the underwriters. The underwriters informed Mr. Thompson that they would accept the settlement if the agreement also released them from any further liability under the contract.

On March 6, 1998, SRG filed for Chapter 11 bankruptcy. Mr. Thompson subsequently filed a motion with the bankruptcy court to approve the settlement of the *Balee* case. In June of 1998, Robert Nugent was hired as SRG's bankruptcy counsel, replacing Mr. Thompson. On December 16, 1998, the bankruptcy court denied the motion to approve the *Balee* settlement. Mr. Nugent and the *Balee* plaintiffs negotiated a different settlement, whereby $125,000 of the $410,000 settlement would be paid into the bankruptcy estate and they filed a motion for approval of the new settlement agreement.

On May 19, 1999, Cynthia Grimes was appointed as the Designated Representative of SRG. As the Designated Representative, Ms. Grimes was the sole representative of the SRG estate. On October 7, 1999, Ms. Grimes withdrew the motion to approve the settlement agreement. Also in October of 1999, Tom Franklin and John Miller, indicating that they represented Ms. Grimes and the estate, had a telephone conversation with counsel for the *Balee* plaintiffs and told counsel that SRG

files contained "every smoking gun memo imaginable." In a letter dated October 27, 1999, Mr. Franklin advised counsel for the *Balee* plaintiffs that "it appears that $410,000 is not an adequate amount to settle all claims" in the *Balee* case and that it "appears that an award could approach or exceed $2 million." Sometime in November of 1999, Mr. Franklin and Mr. Miller told counsel for the *Balee* plaintiffs that SRG documents substantiated plaintiffs' claims. On January 3, 2000, the bankruptcy court approved the employment of Mr. Franklin and Mr. Miller to assist Ms. Grimes.

On January 5, 2000, SRG filed an answer in the *Balee* case admitting liability for all causes of action. Specifically, the answer admitted that the prospectus contained untrue and misleading statements, that the defendants made material misrepresentations and omissions, and that SRG and it officers and directors were liable under the Securities Act of 1933 and the Kansas Securities Act. The defendants in this case do not dispute that they admitted liability but insist that it was consistent with the allegations that SRG intended to assert in a lawsuit against SRG officers and directors. SRG officers and directors filed separate answers in the *Balee* case, denying liability. By a letter dated January 18, 2000, Mr. Franklin informed the underwriters that SRG had admitted liability in an answer filed on January 5, 2000.

Counsel for the *Balee* plaintiffs subsequently made a demand for settlement in the amount of $1.7 million. Mr. Franklin informed Lloyds on March 10, 2000, that SRG had decided to enter into a settlement agreement with the *Balee* plaintiffs

---

1. Defendants insist that the board of directors did not approve the decision to hire Blackwell Sanders and that the firm had a conflict of interest. Defendants admit that SRG officers made the decision to hire Blackwell Sanders.

As explained later, defendants do not show that board approval was necessary.

2. Defendants insist that the board of directors did not authorize Mr. Thompson to negotiate a settlement on behalf of SRG.

in the amount of $1.7 million, with a portion of the settlement being paid into the SRG estate. Lloyds concluded that the settlement was not made in good faith, did not result from arms-length negotiations, was a product of collusion between SRG and the *Balee* plaintiffs and, thus, denied coverage based on a breach of the cooperation clause.

This lawsuit was filed by the lead underwriter of Syndicate No. 79 and seeks a declaration by this court that the underwriters are not liable under the insurance contract. The amended complaint, filed on October 7, 2000, alleges that SRG breached the cooperation clause by filing an answer that admitted the allegations of the *Balee* complaint and did not assert any defenses, and that the *Balee* lawsuit was brought "on behalf of, or at the direction of an Assured, SRG, against other Assureds." Both acts are alleged to have breached the contract.

● Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144

F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

● Discussion

■■■ Kansas law provides that the proper interpretation of a contract is a question of law for the court.[3] *Liggatt v.*

---

3. As explained in this court's September 27, 2000 Order, the court is exercising bankrupt-

*Employers Mutual Casualty Co.*, 46 P.3d 1120, 1129 (Kan.2002). Whether a contract is ambiguous is also a question of law for the court. *Clark v. Wallace County Cooperative Equity Exchange*, 26 Kan. App.2d 463, 465, 986 P.2d 391 (1999). "If the contract is found to be unambiguous, the court must interpret the contract solely within its four corners, and extrinsic evidence is inadmissible." *Id.* The court concludes that the insurance contract is unambiguous. The plain language of the cooperation clause provides that SRG may not take any action that in any way increases the underwriters' exposure to liability under the contract.

■ It is undisputed that Ms. Grimes withdrew the motion before the bankruptcy court to approve a $410,000 settlement, told counsel for the *Balee* plaintiffs that the claims against SRG were valid and that SRG documents supported the claims, filed an answer admitting liability, and then agreed to settle the *Balee* case for $1.7 million. These uncontroverted facts establish that SRG breached the plain language of the contract's cooperation clause by increasing the underwriters' exposure to liability under the contract. Had SRG not filed an answer admitting liability, the underwriters would have had the option of pursuing various defenses or negotiating a settlement in an amount less than the full amount of damages. SRG's decision to settle the lawsuit for what they believed to be the full amount of damages, $1.7 million, and withdrawing the motion for approval of the settlement for $410,000, dramatically increased the underwriters' exposure to liability under the contract. The *Balee* plaintiffs had already agreed to settle the case for $410,000. In fact, before Mr. Franklin and Mr. Miller informed the *Balee* plaintiffs' counsel that

SRG documents supported the *Balee* plaintiffs' claims and that damages could approach $2 million, the most the *Balee* plaintiffs had demanded was $690,000. The court concludes that defendants' actions constituted a breach of the plain language of the cooperation clause. *See, e.g., Wildrick v. North River Ins. Co.*, 75 F.3d 432 (8th Cir.1996) (holding as a matter of law that a defendant in a civil case breached a cooperation clause by denying any fraudulent conduct to insurer, who agreed to provide representation, but admitting shortly before trial to the United States attorney that he committed fraud, making any meaningful defense in the civil case impossible); *Miller v. Jones*, 140 Ohio St. 408, 45 N.E.2d 106 (1942) (affirming judgment for insurer as a defendant based on breach of a cooperation clause where insured filed an answer admitting liability).

"The purpose of cooperation clauses is to protect the insurer's interest and prevent collusion between the insured and the injured person." *Watson v. Jones*, 227 Kan. 862, 866, 610 P.2d 619 (1980). The uncontroverted facts in this case show that the *Balee* plaintiffs originally demanded $690,000 but later agreed to settle the case for $410,000. Mr. Franklin and Mr. Miller, indicating that they represented Ms. Grimes, told counsel for the *Balee* plaintiffs that "every smoking gun memo imaginable in the world" was in SRG's files. Mr. Franklin told the *Balee* plaintiffs' counsel that $410,000 was not adequate to compensate the *Balee* plaintiffs and that an award approaching $2 million would be more appropriate. SRG then filed an answer admitting liability and agreed with the *Balee* plaintiffs' counsel to settle the claim for $1.7 million. These uncontroverted facts establish the type of collusion

cy jurisdiction. The parties do not address whether Kansas law is the appropriate choice of law, but both parties apply Kansas law in

their briefs and the court assumes, therefore, that the parties agree that Kansas law applies.

between SRG and the *Balee* plaintiffs that the Kansas Supreme Court recognized as being prohibited by a cooperation clause.

■ As defendants point out, under Kansas law, an insurer is relieved from liability under an insurance contract only if a breach of the cooperation clause causes substantial prejudice to the insurer's ability to defend itself. *Boone v. Lowry*, 8 Kan.App.2d 293, 299, 657 P.2d 64 (1983). The court finds that the uncontroverted facts show that defendants' actions in breach of the cooperation clause caused substantial prejudice to the underwriters' ability to limit liability under the insurance contract. After admitting liability, sharing its opinion of the evidence and damages with the *Balee* plaintiffs' counsel, SRG agreed to settle the *Balee* case for almost three times the amount of the original demand by the *Balee* plaintiffs. The $1.7 million settlement, no doubt, would not have come about but for the actions taken by SRG in breach of the cooperation clause. Equally significant is that the admission of liability by SRG precluded the underwriters from effectively defending the *Balee* plaintiffs' claims.

■ In their response, defendants argue that SRG, acting through its designated representative, had the duty to pursue claims against officers and directors for wrongdoing. The court agrees that SRG had the right to file claims against SRG officers and directors for wrongdoing. On the other hand, the decision of whether to pursue such claims must include consideration of whether the action would breach the insurance contract covering such wrongdoing. If pursuing such claims would breach the insurance contract and expose SRG to liability otherwise covered by the contract, and if SRG's claims against directors and officers did not exceed the amount sought by the *Balee* plaintiffs, SRG would not have a "duty" to pursue such claims. Instead, the designat-

ed representative of SRG should realize that not pursuing the claims is in SRG's best interest. At some point, according to defendants, Ms. Grimes was appointed trustee for the purpose of liquidating SRG. The court agrees that a trustee has the duty to investigate any fraud by management and to consider pursuing any claims on behalf of the debtor. Again, while Ms. Grimes had the right to do so, the right to pursue claims against SRG officers and directors does not relieve her of the consequences for failing to comply with the terms of the insurance contract. Actions breaching the cooperation clause of an insurance contract will still allow the insurer to avoid any obligations under the contract.

■ Defendants suggest that in order to prevail on summary judgment, plaintiff must show that the underwriters rendered all performances due under the contract and did not materially breach the contract. In support, defendants cite the Restatement (Second) of Contracts § 237. Section 237 of the Restatement provides that "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Following the Restatement, a material breach by either party relieves the other of its duty to perform under the contract. In this case, plaintiff wants· to avoid performance, so the relevant inquiry is whether SRG materially breached the contract. Likewise, under Kansas law, in order to avoid performance under an insurance contract, an insurer must demonstrate a breach of the cooperation clause that causes substantial prejudice to the insurer's ability to defend itself. *Boone v. Lowry*, 8 Kan.App.2d at 299, 657 P.2d 64 (1983). Neither Kansas law nor the Restatement place a burden on an insurer

seeking to avoid performance under a contract to prove that it did not materially breach the contract.[4]

▮ Defendants argue that the underwriters breached the insurance contract before defendants breached the cooperation clause and cite to Alaska case law holding that if an insurer wrongfully denies coverage, the insurer cannot escape liability on the basis that the insured breached a cooperation clause subsequent to the insurer's breach.[5] Kansas law seems to be in accord. Under Kansas law, "[w]hen an insurer wrongfully denies coverage, the insurer breaches an express contract provision." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 831, 934 P.2d 65 (1997). An insurer who wrongfully denies coverage cannot later assert as a defense that the insured breached a provision of the contract requiring prior approval of a settlement. *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.*, 244 Kan. 576, 582, 769 P.2d 1184 (1989). Other jurisdictions follow the rule that an insurer may not avoid liability by pointing to a breach of the cooperation clause by the insured after a denial of coverage. Debra E. Wax, Annotation, *Liability insurers's waiver of right, or estoppel, to set up breach of co-operation clause*, 1984 WL 263193, 30 A.L.R.4th 620 (1984) ("It has been held that an insurer which disclaims liability under a liability insurance policy for a reason other than the insured's non-co-operation, and refuses to defend the insured, cannot thereafter assert, in defense to an action on the policy, the insured's breach of the co-operation clause in the policy by conduct occurring after the insurer's disclaimer of liability."); C.T. Drechsler, Annotation, *Consequences of liability insurer's refusal to assume defense of action against insured upon ground that claim upon which action is based in not within coverage of policy*, 1956 WL 11806, 49 A.L.R.2d 694 (1956) ("It appears to be well settled that the unjustified refusal of the insurer to defend an action against the insured on the ground that the claim upon which the action is based is outside the policy coverage deprives the insurer of its right to insist upon compliance by the insured with the policy provision requiring insured's co-operation, aid, and assistance. In other words, in such a case the insurer cannot set up lack of co-operation as a defense.").

▮ Following this precedent, defendants may have been able to avoid summary judgment by pointing to evidence indicating that the underwriters denied coverage prior to defendants' breach of the cooperation clause. Defendants, however, do not do so. The uncontroverted facts show that the underwriters provided for the defense of the insured and agreed to pay the $410,000 settlement initially reached by the parties. Defendants fail to point to any evidence indicating that the underwriters refused to defend or indemnify the insured prior to the acts that constitute defendants' breach of the cooperation clause.

Defendants assert that if an insurer breaches any duty arising under the contract or otherwise, even if the insurer agrees to defend and indemnify the insured, that the insured is excused from compliance with the cooperation clause.

---

**4.** If there were such a requirement, the court would find that it has been met because the summary judgment record indicates that there was no material breach by the underwriters.

**5.** In *Grace v. Insurance Co. of North America*, 944 P.2d 460 (Alaska 1997), the court held that summary judgment should be denied where the evidence was sufficient to support a finding that the insurance company wrongfully denied coverage, by refusing to pay a settlement, before the insured breached the cooperation clause.

For example, defendants assert that an insurer's failure to adequately investigate a claim relieves an insured of its duty to cooperate. Defendants cite no case law in support. In its own research, the court found case law indicating that wrongful denial of coverage can relieve the insured of a contractual obligation to cooperate while preserving the insured's ability to collect under the contract. The court found no case law suggesting that if an insurer falls short in executing any of its obligations, such as the duty to investigate, the shortfall will relieve the insured of its obligation to cooperate. As explained below, however, the court need not reach this legal question because defendants fail to come forward with evidence from which a reasonable jury could conclude that the underwriters did not comply with their contractual obligations or other duties prior to defendants' breach of the cooperation clause.

■■■ Defendants suggest that the underwriters had a conflict of interest with SRG and thereby breached their duties under the contract. The uncontroverted facts indicate that the only conflict of interest occurred when an agreement was reached between the *Balee* plaintiffs and Ms. Grimes whereby the SRG estate would retain a portion of the insurance proceeds paid to the *Balee* plaintiffs.[6] Following the agreement, a good defense was no longer in SRG's best interest. Instead, it was in SRG's interest to admit to liability and seek a large payment from the underwriters to the *Balee* plaintiffs. The very cre-

ation of a conflict of interest, the act of colluding with the *Balee* plaintiffs to fund the SRG estate and increase the *Balee* plaintiff's judgment, breached the cooperation clause. Thus, from the moment that a conflict of interest existed, SRG had breached the cooperation clause.

■■■ Defendants argue that the underwriters breached their duty to approve defense counsel. Defendants admit that the underwriters approved the appointment of Mr. Thompson of the Blackwell Sanders firm as defense counsel. Defendants, however, assert that Mr. Thompson had a conflict of interest because an attorney in his firm worked on the IPO.[7] Without support, defendants assert that the duty to approve defense counsel includes selecting defense counsel without a conflict of interest. According to defendants, the underwriters breached their duty to approve defense counsel by failing to investigate or raise questions about Mr. Thompson. Not surprisingly, the court found no law supporting defendants' argument that an insurer's duty to approve defense counsel includes conducting an independent investigation of the insured's requested counsel to ensure that he has no conflict of interest with the insured. The court notes that defendants' own brief quotes authority indicating that it is the responsibility of the insured to provide the insurer with sufficient information about their requested counsel so that the insurer is not justified in withholding its approval of defense counsel. The underwriters approved the counsel requested by defendants.[8] There

6. Plaintiff also points out, and defendants admit, that part of Ms. Grimes' compensation was based on the amount of money she recovered for the SRG estate.

7. Defendants do not explain how under the other uncontroverted facts of this case this would create a conflict of interest with SRG. Absent any allegations by defendants here that Blackwell Sanders was somehow respon-

sible for the securities law violations, the court assumes that if Mr. Thompson was interested in defending the work of his firm on the IPO that his interest would align with the interest of SRG in defending the allegations made by the *Balee* plaintiffs.

8. Defendants cite no authority indicating that a vote of the board of directors is required to approve a request of counsel on behalf of

is simply no support in the law or in the record for defendants' argument.

■ Defendants argue that the underwriters failed to adequately investigate the claims of the *Balee* plaintiffs. They assert that the underwriters simply relied on defense counsel to inform the underwriters of the facts of the case. This was unacceptable, according to defendants, because of what they now characterize as defense counsel's conflict of interest. Defendants point to no evidence indicating that the underwriters' investigation was insufficient. They simply assert that the underwriters relied exclusively on Mr. Thompson and that this was inadequate. The court disagrees. Defendants point to no evidence showing that the underwriters relied exclusively on Mr. Thompson for information, point to no authority indicating that this constitutes an inadequate investigation, and point to no evidence showing that reliance on Mr. Thompson somehow impaired the underwriters' understanding of the case.[9] As the court explained earlier, even if defendants met this burden, the court is unaware of any case law indicating that an insurer's mediocre job of investigating a claim relieves the insured of their obligations under a cooperation clause.

■ Defendants assert that the underwriters breached their duty of good faith by requesting that a settlement with the *Balee* plaintiffs include a release from liability under the contract for further claims arising out of related conduct. In essence, defendants argue that a settlement precluding them from receiving additional money under the policy for claims brought by SRG against SRG officers and directors was not in their interest.[10] The cases cited by defendants do not support their argument.[11] The uncontroverted facts show that the underwriters' request for release from liability for related claims had no impact on the disposition of the *Balee* case. The evidence in the summary judgment record shows that the request for a release was made with regard to the $410,000 settlement agreement, an agreement withdrawn from the bankruptcy court's consideration by defendants. Absent evidence showing that the underwriters' request for a release had some impact on the settlement of the *Balee* case, the court need not reach the ultimate question of whether including such a release in a settlement agreement amounts to a breach of a duty owed to SRG.[12] Nonetheless, based on its reading of the plain language of the cooperation clause, the court notes that if SRG

SRG. The court agrees with plaintiff, and the authority cited by plaintiff, that officers have the authority to hire counsel on behalf of a corporation without board approval.

9. The court also notes that the duty to investigate allegedly breached by the underwriters related to the agreed $410,000 settlement, the settlement with respect to which the defendants withdrew the motion for approval. Thus, any failure in the underwriter's duty to investigate had no impact on the direction of the case.

10. The court does not read defendants' papers to argue that the release would prevent SRG from pursuing claims against SRG officers and directors. There is no evidence in the record to indicate that the underwriters made

a request for a release that would go beyond limiting the underwriters' future liability.

11. The cases simply state the general rules that an injured person's rights cannot be defeated by a cancellation or settlement after an accident has occurred, and that an insurer cannot hastily enter into a settlement for the purpose of exhausting the limit of its liability and avoiding its obligation to fund the defense of the insured.

12. The court does not read defendants brief as suggesting that the mere request for the inclusion of a release in the settlement agreement, the request having no impact on the direction of the case, breached some duty owed to the insured.

brought a lawsuit against SRG officers and directors for claims related to the IPO after settling the *Balee* plaintiffs' claims, SRG would thereby breach the cooperation clause by increasing the underwriters' exposure under the contract. Thus, whether or not a release was included in a settlement agreement would be irrelevant because the cooperation clause would prevent SRG from recovering additional money under the policy. Defendants, who have not attempted to explain to the court why they would have a claim against SRG officers and directors for conduct related to the IPO that is separate from the claims in the *Balee* case, simply could not get additional proceeds from the policy paid into the SRG estate no matter the terms of the *Balee* settlement.

Defendants argue that summary judgment is not appropriate because plaintiff has not demonstrated that the underwriters made a good faith effort to obtain the cooperation of Ms. Grimes. In support, defendants point to *Watson v. Jones*, 227 Kan. 862, 610 P.2d 619 (1980). In *Watson*, an insurer attempted to avoid liability under a contract when the insured was not present at trial or available to provide testimony. The court explained that an insurer "must prove it acted in good faith and attempted to secure the attendance and testimony of its insured and that the assured's failure to appear and testify at trial was due to an intentional refusal to cooperate despite timely and diligent efforts of the insurer." *Id.* at 868, 610 P.2d 619. The court noted that the evidence presented at trial showed that "until shortly before trial" the insurer did not make a concerted attempt to locate the insured to prepare for trial and that the insured never received or acknowledged notice of the trial setting. *Id.* at 869, 610 P.2d 619. In addition, the court pointed out that there was "little or no" question about liability and that the trial was about damages. *Id.* The insured's cooperation, therefore,

would have been of limited significance. The court upheld the trial court's decision that the insurer was not diligent in attempting to secure the cooperation of the insured and, thus, that the insurer did not have a defense to liability based on breach of the cooperation clause.

In this case, the uncontroverted facts show that the underwriters provided counsel to SRG and SRG officers and directors and that counsel mounted a defense of the claims made by the *Balee* plaintiffs. After her appointment as designated representative of SRG, Ms. Grimes apparently chose to hire different counsel and pursue a lawsuit against SRG directors and officers. Again, it was entirely her right to do so. On the other hand, the decision and subsequent actions breached the cooperation clause of the contract. This case is not at all like the *Watson* case. There is no dispute that the underwriters were willing to defend the *Balee* lawsuit. Instead, the uncontroverted facts show that Ms. Grimes decided to pursue a litigation strategy contrary to the interests of the underwriters, in breach of the cooperation clause. Unlike the *Watson* case, there is nothing suggesting that the underwriters somehow failed to make a good faith effort to secure SRG's cooperation. Instead, Ms. Grimes made the decision to reject the underwriters' attempt to defend the *Balee* lawsuit in favor of filing suit against the SRG officers and directors.

Because there are no controverted material facts relevant to plaintiff's claim that the underwriters are relieved from performance under the insurance contract, and the uncontroverted evidence indicates that actions taken on behalf of SRG breached the cooperation clause and caused substantial prejudice to the underwriters' ability to defend the *Balee* action, the court holds that plaintiff is entitled to summary judgment.

Defendants filed a counterclaim and plaintiff's motion also seeks summary judgment on the counterclaim. The counterclaim seeks declaratory judgment, alleging that the underwriters failed to act in good faith in refusing to consent to the $1.7 million settlement agreement, and seeks attorney fees pursuant to K.S.A. § 40–256 for the underwriters' refusal to pay the claim without just cause. As the court has explained, the uncontroverted facts show that the underwriters had no duty to pay the $1.7 million settlement agreement because they were relieved from their obligations under the contract based on defendants' breach of the cooperation clause. There being no controverted material facts for trial, the court holds that plaintiff is entitled to summary judgment on the counterclaim. Because the affidavits, exhibits and assertions included in the papers filed by defendants do not change this conclusion, the court finds plaintiff's motion to strike to be moot and denies it as such.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Doc. 192) is granted. The court declares that the underwriters are relieved of their duty to perform under the Directors and Officer and Company Reimbursement Indemnity Insurance Certificate, DOM 3000357, effective from December 11, 1996 to December 11, 1997 issued to Stoico Restaurant Group, Inc. based on defendants' breach of the contract's cooperation clause. Defendants' counterclaim is hereby dismissed.

IT IS FURTHER ORDERED that plaintiff's motion to strike affidavits and exhibits submitted by defendants (Doc. 211) is denied.